1  Jon M. Leader  (SBN: 147059)
   E-Mail: jleader@llaw.la
2  Leader Counsel
   1990 South Bundy Drive, Suite 390
3  Los Angeles, CA  90025
4  Telephone:   (310) 696-3300
   Telecopy:    (310) 696-3305
5
6  Karen J. Bernstein (*Pro Hac Vice* Admission Pending)
7  E-Mail: kjb@bernsteinip.com
   Bernstein IP
8  200 Park Avenue, Suite 1700
   New York, New York 10166
9  Telephone: (212) 339-9955
10 Telecopy:   (212) 682-0278
11
   Attorneys for Plaintiff CBD Jeans, Inc.
12
13              **UNITED STATES DISTRICT COURT**
14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
15

| | |
|---|---|
| 16 CBD JEANS, INC., a Nevada corporation, | Case No. 2:15-cv-7052 |
| 17             Plaintiff, | **COMPLAINT FOR:** |
| 18 | 1)  **DECLARATORY JUDGMENT OF NO TRADEMARK INFRINGEMENT;** |
| 19      vs. | 2)  **CANCELLATION OF FEDERAL TRADEMARK REGISTRATION;** |
| 20 REVENGE DESIGNS, INC., a Nevada corporation; CARTEL BLUE, INC.; a Wyoming corporation; DAVID THOMAS RHODES, an individual; and DOES 1- 40, | 3)  **FALSE ADVERTISING (LANHAM ACT §43(A));** |
| 21 | 4)  **TRADE LIBEL;** |
| 22 | 5)  **FALSE OR MISLEADING ADVERTISING and UNFAIR COMPETITION (*BUS. & PROF. CODE* §§17200 and 17500, *et seq.*); and** |
| 23 | |
| 24             Defendants. | 6)  **CONVERSION** |
| 25 | |
| 26 | *JURY TRIAL DEMANDED* |

16 CBD JEANS, INC., a Nevada
   corporation,
17             Plaintiff,
18
19      vs.
20
21 REVENGE DESIGNS, INC., a
   Nevada corporation; CARTEL
22 BLUE, INC.; a Wyoming
   corporation; DAVID THOMAS
23 RHODES, an individual; and DOES
   1- 40,
24
             Defendants.
25
26
27
28

1    Plaintiff CBD Jeans, Inc., a Nevada corporation ("Plaintiff"), by and through

2  its attorneys, Leader Counsel and Bernstein IP, files its Complaint against

3  Defendants Revenge Designs, Inc. ("Revenge Designs"), Cartel Blue, Inc. ("Cartel

4  Blue"), David Thomas Rhodes ("Defendant Rhodes"), and Does 1-40, inclusive

5  (Revenge Designs, Cartel Blue, Defendant Rhodes, and Does 1-40, inclusive, are

6  collectively referred to in this Complaint as "Defendants") for damages and

7  injunctive relief as follows:

8    Plaintiff alleges the following, upon actual knowledge with respect to itself

9  and its own acts, and on information and belief as to all other matters.

10                    **NATURE OF ACTION**

11    1.    This is an action for Declaratory Judgment seeking a declaration that

12  Plaintiff does not infringe a trademark putatively owned by Defendant Rhodes.

13  Plaintiff also brings this action for cancellation of Defendant Rhodes' federal

14  trademark registration for CARTEL BLUE, False Advertising, and Trade Libel.

15  Plaintiff also brings this action for Conversion, as well as for Injunctive Relief and

16  Punitive Damages.

17                **JURISDICTION AND VENUE**

18    2.    This Court has subject matter jurisdiction over this action pursuant to

19  28 U.S.C. §1331 and §1338, and Section 37 of the Lanham Act (15 U.S.C. §1119).

20  This Court has pendent jurisdiction over the remaining causes of action because

21  both the state and federal claims are derived from a common nucleus of operative

22  facts and considerations of judicial economy dictate the state and federal issues be

23  consolidated for a single trial.

24    3.    This Court has personal jurisdiction over Defendants as Defendants'

25  conduct systematic and continuous business within California related to the

26  unlawful activities at issue in this Complaint.  Defendants have offices located in

27  California.  Defendants continuously and systematically solicit business from, and

28  conduct business with, California residents using the Internet through one or more

**COMPLAINT FOR DECLARATORY RELIEF; CANCELLATION OF FEDERAL TRADEMARK REGISTRATION; FALSE ADVERTISING; TRADE LIBEL; AND CONVERSION**

fully interactive websites and through the Internet they direct California residents to consider investing in Revenge Designs' and Cartel Blue's businesses or consider purchase of products.  In addition, Defendants (either in concert or individually) have undertaken acts of false advertising, trade libel, and conversion that were purposely directed at California with the knowledge that the brunt of the injuries would be felt by Plaintiff in California.  In addition, Plaintiff is informed and believes that Defendant Rhodes resides in this District.

4.     Venue is proper under 28 U.S.C. §1391(b)(2), and 28 U.S.C. §1391(c) in that Revenge Designs' and Cartel Blue's principal places of business are located in Los Angeles, California, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant Rhodes resides in this District.

## THE PARTIES

5.     Plaintiff CBD Jeans, Inc. is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 4705 South Durango Drive, Suite 100-105, Las Vegas, Nevada 89147.

6.     Defendant Revenge Designs is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 1330 Factory Place, Suite 124, Los Angeles, California 90015.  It has been known under previous names and Defendant Rhodes took over control of Revenge Designs in or around January, 2015.

7.     Defendant Cartel Blue is a corporation organized and existing under the laws of the State of Wyoming, having a principal place of business at 5600 Wilshire Blvd., # 351, Los Angeles, California 90036.  Cartel Blue was formed in or around January 29, 2015.  Plaintiff is informed and believes that Cartel Blue is also a corporation organized and existing under the laws of the State of Nevada having a principal place of business at 1330 Factory Place, Suite 124, Los Angeles, California 90015 and the two corporations are related or identical.

8.      On information and belief, Defendant Rhodes is an individual residing in Lubbock, Texas and Los Angeles, California.  Defendant Rhodes is the President, Secretary, Director, and majority shareholder of Revenge Designs.  He is also the President of Cartel Blue, a wholly owned subsidiary of Revenge Designs. Defendant Rhodes operates, manages, supervises, or otherwise is responsible for the daily operations and decisions of Revenge Designs and Cartel Blue.  Plaintiff is informed and believes, and based thereon alleges, that Defendant Rhodes has concealed his felony conviction from investors and others associated with, or contracting with, Defendants in association with the activities and omissions herein alleged.

9.      Upon information and belief, Defendant Rhodes organized Revenge Designs and Cartel Blue to conduct business confusingly similar to Plaintiff's business and using Plaintiff's trademarks and intellectual property rights including, but not limited, to CARTEL BLUE (the "Disputed Mark").

10.     Upon information and belief, Defendants Revenge Designs and Cartel Blue are devices by which Defendant Rhodes has engaged in trade libel.

11.     Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned in this Complaint, Defendants Revenge Designs and Cartel Blue were agents and/or alter egos of Defendant Rhodes and, in doing the things alleged in this Complaint and were acting within the course and scope of any such agency. Plaintiff is informed and believes that Defendant Rhodes is the sole shareholder, officer, and director of Revenge Designs and Cartel Blue and that a unity of interest exists such that Defendant Rhodes was inseparable from the others.  Such unity of interest includes under capitalization, commingling of funds, inappropriate and/or unauthorized diversion of assets, treating corporate assets as his own, self-dealing, and failure to follow corporate formalities (including the failure to have meetings, keep minutes, and issue resolutions).

12.     Plaintiff is not aware of the true names and capacities of Defendants named in the Complaint as Does 1-40, inclusive, and therefore brings this Action against these Doe Defendants by such fictitious names.  Plaintiff will amend its Complaint to allege the Doe Defendants' true names and capacities when known.

### PLAINTIFF'S BUSINESS AND COMMON LAW TRADEMARK

13.     Plaintiff is the successor in interest and assignee to certain assets and intellectual property of Hemp Blue, Inc. ("Hemp Blue").  Hemp Blue is a Nevada Corporation that was the successor in interest and assignee of certain of the assets and intellectual property of Cartel Blue, formerly a Nevada Corporation that was duly formed on March 11, 2014 ("Cartel Blue Nevada").  Cartel Blue Nevada produced high quality jeans under the CARTEL BLUE mark and first made sales of the jeans in interstate commerce at least as early as February, 2015.

14.     Plaintiff and its predecessors in interest and assignors have spent considerable sums advertising and promoting the CARTEL BLUE mark nationally and internationally by way of Plaintiff's official website accessible through www.cbdjeans.com, at trade shows, on the Daytime Emmys® award winning web series The Bay, and otherwise.  As a result, Plaintiff has developed a valuable association in the minds of purchasers that CARTEL BLUE and the goods offered on its official website and elsewhere are the source of high quality denim jeans from Plaintiff.

15.     In light of the above, Plaintiff is the senior trademark holder by assignment and owns the common law rights to the Disputed Mark.

16.     Plaintiff also owns the CARTEL BLUE logo (the "Logo") by way of assignment, which is affixed to its label on the jeans and on its website located at www.CBDjeans.com.

### DEFENDANT RHODES

17.     Defendant Rhodes is the President, Secretary, Director, and majority shareholder of Revenge Designs.  He is also the President of Defendant Cartel Blue,

**COMPLAINT FOR DECLARATORY RELIEF; CANCELLATION OF FEDERAL TRADEMARK REGISTRATION; FALSE ADVERTISING; TRADE LIBEL; AND CONVERSION**

a wholly owned subsidiary of Revenge Designs. Prior to that time, in or around January, 2014, Defendant Rhodes met Robin Lane, the former President of Cartel Blue Nevada, the President of Hemp Blue, and a Director of Plaintiff ("Ms. Lane") through a mutual friend. When the two met, Defendant Rhodes had recently served a 20-year prison sentence for having been found guilty under a federal statute for possession with intent to distribute cocaine and was trying to get his life back on track.

18.     In or around February, 2014, Defendant Rhodes presented Ms. Lane and a mutual friend with a written proposal to produce jeans under the name "Cartel Blue." A true and correct copy of this proposal is attached as Exhibit A.

19.     Ms. Lane shortly thereafter loaned $150,000 of her own money to start the business prior to Cartel Blue Nevada's incorporation (the "Seed Money"). The Seed Money was sent to Defendant Rhodes by check and those funds were deposited into his wife's personal account. The Seed Money was earmarked for Defendant Rhodes to travel to Los Angeles to, *inter alia*, enter contracts on behalf of Cartel Blue Nevada to start the business.

20.     Portions of the Seed Money were used by Defendant Rhodes to renew the domain name Cartelblue.com, for purposes of using the domain name to create a website that would sell CARTEL BLUE jeans to the public on behalf of Cartel Blue Nevada. Defendant Rhodes also was given the authority to enter into manufacturing agreements on behalf of Cartel Blue Nevada.

21.     Shortly thereafter, Cartel Blue Nevada was incorporated. Cartel Blue Nevada paid two employees and all taxes owed by the corporation. An operating account was opened in the name of Cartel Blue Nevada, which was personally funded by Ms. Lane, and Defendant Rhodes and his wife were added as co-signatories to the account (the "Corporate Account"). The Corporate Account continued to be used by Defendant Rhodes, and he misappropriated and misused the Seed Money and the Corporate Account for his own personal use.

22.     Although Defendant Rhodes was given the authority to enter into contracts with jeans manufacturers on behalf of Cartel Blue Nevada, he was not an employee, principal, corporate officer, or shareholder of Cartel Blue Nevada.

23.     At all times, any and all payments made to the jeans manufacturers and the designers were made in the name of Cartel Blue Nevada and not Defendant Rhodes and were solely for the benefit of Cartel Blue Nevada and Plaintiff.  For example, see true and correct copies of manufacturing contracts that Defendant Rhodes signed on behalf of Cartel Blue Nevada attached as Exhibit B.

24.     In preparing to launch the CARTEL BLUE line of jeans, Defendant Rhodes also secured his brother-in-law to design the Cartelblue.com website.  Cartel Blue Nevada paid for these services.  A Facebook page and other social media were created for the CARTEL BLUE line of jeans as well.  As explained more fully below, additional Cartel Blue domain names were registered by Defendant Rhodes on behalf of Cartel Blue Nevada.

25.     As time went by, Ms. Lane was not satisfied with the progress of the design of the Cartelblue.com website.  She pressed Defendant Rhodes on the status of its completion but was given no answers.  Ms. Lane also discovered through Cartel Blue Nevada's auditing firm that Defendant Rhodes and his wife were improperly using the Corporate Account without Cartel Blue Nevada's authorization for such extravagant expenses as hotel rooms.  The parties also had several disagreements over the direction of the website and the jeans line.

26.     After several material disagreements between the parties concerning business operations, coupled with Defendant Rhodes' misuse of Cartel Blue funds and assets, in or around September, 2014, Ms. Lane requested that Defendant Rhodes provide her with the user name and password for the Cartel Blue Nevada website and all social media logins and passwords.  Defendant Rhodes refused.

27.     Shortly thereafter, on September 23, 2014, Defendant Rhodes submitted his resignation to Ms. Lane in the form of a text message.  A true and correct copy of this text message is attached as Exhibit C.

28.     Just three days later after his resignation, on September 26, 2014, Defendant Rhodes wrote a self-serving letter to Ms. Lane and sent it to her and others (including their mutual friend) via e-mail wherein he offered to continue the business relationship with Cartel Blue Nevada, provided he be granted 40% of all stock in Cartel Blue Nevada if and when the corporation went public.  A true and correct copy of this letter is attached as Exhibit D.

29.     In the September 26, 2014 letter, Defendant Rhodes also admits he used Cartel Blue Nevada "money" to "purchase[] [the] Cartelblue.us, .biz, .net, .org and .info [domain names] for one year" and admitted that those domain names belong to Cartel Blue Nevada.  *See* Exhibit D.

30.     Pursuant to Whois, the database that lists the contact information for domain name ownership (akin to the White Pages for a telephone book), the domain name Cartelblue.us is registered in Defendant Rhodes' name, was created on April 13, 2014, renewed in or around March 14, 2015, and is not due to expire until April 12, 2016.  The domain names, Cartelblue.biz, .net, .org, and .info were created on April 13, 2014 and registered in Defendant Rhodes' name, renewed on March 14, 2015, and are not due to expire until April 12, 2016 or April 13, 2016.  Defendant Rhodes also is the named Registrant of Cartelblueinc.com, which was first registered on September 8, 2014, less than two weeks before his resignation. Cartelblueinc.com then was renewed in or around July 1, 2015 and expires on September 8, 2016.  True and correct copies of the current Whois records for Cartelblue.us, Cartelblue.net, Cartelblue.org, Cartelblue.biz, Cartelblue.info, and Cartelblueinc.com are attached as Exhibit E.

31.     The Whois information for Cartelblueinc.com originally listed Defendant Rhodes as the Registrant and then recently changed to a proxy address.

Cartelblue.com was originally registered to Defendant Rhodes and he renewed the domain name using the Seed Money in or around April, 2014.

32.   With respect to Cartelblue.us, it was originally in Defendant Rhodes' name as the Registrant but then went under a proxy service in or around August 11, 2015, the very same day Defendants' counsel sent their reply letter (as discussed more fully below) to Plaintiff's counsel.

33.   Cartelblue.com, Cartelblue.net, Cartelblue.org, Cartelblue.biz, Cartelblue.info, and Cartelblueinc.com all were listed under Defendant Rhodes' name as the Registrant and then were changed to a proxy service in or around August 8, 2015, two days after Plaintiff sent the additional response letter to Defendant and three days before Defendants sent their reply letter (as discussed more fully below).  Cartelblue.com is the website for which Defendants intend to launch an improperly competing "Cartel Blue" line of jeans.  True and correct copies of the historical Whois records evidencing the previous registrant, the present proxy registrant and the renewal and expiration dates for Cartelblue.com, Cartelblue.net, Cartelblue.org, Cartelblue.biz, Cartelblue.info, and Cartelblueinc.com (collectively, the "Disputed Domain Names") are attached as Exhibit F.

34.   All of the Disputed Domain Names, except Cartelblue.com, forward to a GoDaddy parked page with links to various services, including competitors of Plaintiff.  True and correct copies of the parked page are attached as Exhibit G.

35.   Defendant Rhodes prevented Cartel Blue Nevada from gaining access to its social media logins, passwords, and websites despite Plaintiff's demand that Defendant Rhodes turn over the information in spite of the fact that Cartel Blue Nevada paid all of the expenses for the project including, but not limited to, the Cartelblue.com website design, manufacturing costs, payroll, and other items.

36.   Cartel Blue Nevada presently maintains an inventory of approximately 5,000 pairs of jeans manufactured under contracts signed by Defendant Rhodes on

behalf of Cartel Blue Nevada and Plaintiff.  Defendant Rhodes knew about the manufacturing contracts to produce the 5,000 pairs of jeans and that Cartel Blue Nevada was about to start selling the jeans.  He also knew that Cartel Blue Nevada, through the Seed Money and the funds loaned by Ms. Lane to Cartel Blue Nevada by way of its Corporate Account, paid for the manufacture and design of that inventory and that the manufacturers were billing Cartel Blue Nevada for the work. *See* Exhibit B.

37.     Shortly after his resignation, Rhodes improperly and without permission removed a substantial number of pairs of jeans from Cartel Blue Nevada's project manager office.  The project manager did not know at that time that Defendant Rhodes had resigned, but when he discovered that Defendant Rhodes no longer had a business relationship with Cartel Blue Nevada, he informed Plaintiff about the missing jeans.  Plaintiff (via its assignor and others) demanded the return of the jeans.  Defendant Rhodes has never returned the jeans despite the demand.

38.     At no time during Defendant Rhodes' and Cartel Blue Nevada's business relationship were any pairs of jeans or any other apparel sold to the public under the trade name CARTEL BLUE.

39.     Based on information and belief, Defendants have not made sales of any apparel under the Disputed Mark.  Defendants feature pictures of jeans with the CARTEL BLUE Logo and on the labels of its purported line of jeans and it displays them on its Facebook page, Twitter feed, and website located at Cartelblue.com. Defendants have repeatedly stated that they are "planning" to launch a line of jeans under the name "Cartel Blue," but there is no evidence that such a line of jeans have been actually sold under the Disputed Mark.  *See* Exhibits I, J (described below).

40.     Plaintiff reasonably believes that, if Defendants go out on the market with a competing "Cartel Blue" line of jeans, they will cause substantial confusion in the marketplace and harm the goodwill Plaintiff has developed with the public, in

1  addition to other injuries by Defendants' the false and libelous statements, as

2  discussed more fully below.

3  <u>**DEFENDANTS' UNLAWFUL ACTS**</u>

4      41.    Defendant Rhodes fraudulently procured the federal trademark

5  registration for CARTEL BLUE.  According to the Certificate of Registration for

6  CARTEL BLUE, on September 25, 2014, just days after Defendant Rhodes

7  submitted his resignation to Cartel Blue Nevada and one day before he sent the

8  September 26, 2014 letter, he signed an Amendment to Allege Use pursuant to 18

9  U.S.C. §1001, swearing under penalty of perjury that the date of first use for

10  CARTEL BLUE was April 23, 2014, which purports that the Disputed Mark was

11  used in connection with:

12      "Bandanas; Beanies; Belts; Blazers; Blouses; Coats; Crop pants; Denims;

13  Dresses; Footwear; Hats; Hooded sweatshirts; Jeggings, namely, pants that are partially jeans and partially leggings; Jump suits; Leggings; Long-sleeved

14  shirts; Overalls; Pajamas; Pants; Robes; Scarfs; Shirts; Short-sleeved or long-sleeved t-shirts; Shorts; Socks; Suits; Suspenders; Sweat pants; Sweaters;

15  Sweatshirts; T-shirts; Tank tops; Thermal socks; Thermal underwear; Ties;

16  Trench coats; Underwear; Vests."

17  A true and correct copy of the Amendment to Allege Use pursuant to 18 U.S.C.

18  §1001 is attached as Exhibit H.

19      42.    Defendant Rhodes' sworn statement is knowingly false.  A review of

20  the Cartelblue.com website presently and in the past indicates only a proposed

21  future launching of a line of jeans called "Cartel Blue."  Revenge Design's 2015

22  Annual Report ending January 31, 2015 and 10-Q for the period ending April 30,

23  2015 stated that it is planning to launch a brand of jeans called "Cartel Blue."  A

24  true and correct copy of Revenge Design's Annual Report ending January 31, 2015

25  is attached as Exhibit I.  Its most recent filing reports the same information.  A true

26  and correct copy of Revenge Designs' 10-Q Report for the period ending April 30,

27  2015 is attached as Exhibit J.

28

43.     To date, there is still very little content on the Cartelblue.com website and means to purchase jeans from it.  Further, a review of Defendant Cartel Blue's Facebook page and Twitter feed indicate that the purported jeans line is soon to be launched.  Such use of "Cartel Blue" is not actual use under the Lanham Act.  Cartel Blue features pictures on its Facebook page and Twitter feed of jeans bearing Plaintiff's CARTEL BLUE Logo embroidered on the back pocket of the jeans, a hang tag bearing the Cartel Blue Logo, the Cartel Blue Logo label sewn into the inside back of the jeans, and the Cartel Blue Logo and word mark on the buttons. True and correct copies of screenshots of Cartel Blue's Facebook page and Twitter feeds are attached as Exhibit K.

44.     Based on the fact that there is no indication any "Cartel Blue" jeans were ever sold by Defendants, the Amendment to Allege stating a first use date of April 23, 2014 is intentionally false, especially considering that it was at the same time in April, 2014 that Defendant Rhodes was in a business relationship with Cartel Blue Nevada and was securing manufacturing agreements on behalf of Cartel Blue Nevada for its line of jeans, all of which were signed by Defendant Rhodes on behalf of Cartel Blue Nevada and paid for by Cartel Blue Nevada.

45.     On July 22, 2015, Defendants issued a paid press release, which was reported by several major online media outlets and including, but not limited to, Dow Jones' Marketwatch.com and Yahoo! Finance where it was announced that Defendants were serving a cease and desist letter on Plaintiff because it had:

> [M]ade unauthorized use of the Company's [Defendants'] trademark and logo on its websites and social media pages[,] the Company deemed it necessary to hire an attorney to send them a cease and desist letter… To avoid any confusion our customers and shareholders might have, [and] the Company felt it was necessary to take immediate action regarding the use of its trademark images. www.CBDjeans.coms has no rights or privileges to the Cartel Blue logo or trademark and must therefore take all images off of any and all websites within its control (collectively, the "Defamatory Statements").

True and correct copies of these Defamatory Statements and documents are attached as Exhibit L.

46.     Subsequently, Plaintiff received a cease desist letter dated July 20, 2015 from Defendants claiming that Defendants were using a "Cartel Blue" mark "continuously since at least 2011 with certain goods and services including, but not limited to, apparel" (emphasis added).  The July 20, 2015 cease and desist letter (Exhibit M, below) demanded Plaintiff "immediately cease and desist from further use of the CARTEL BLUE trademark and similar variants, including removing the label from all products and ceasing use of CBDjeans.com and Cartelblue.Xtive.net." The letter then threatened to "pursue all available remedies" if Plaintiff did not comply with Defendants' demands.

47.     Plaintiff responded to the July 20, 2015 cease and desist letter via e-mail on July 31, 2015, advising Defendants: (a) of the prior business relationship between Defendant Rhodes and Cartel Blue Nevada, and (b) that Plaintiff's predecessor in interest paid for the manufacture of the CARTEL BLUE jeans and began selling them in January [sic] of 2015 and therefore is the senior trademark holder by way of an Asset Transfer Agreement.  Accordingly, the allegations contained in the Defamatory Statements and the July 20, 2015 cease and desist letter are patently false.  The July 31, 2015 response letter also demanded that Defendants retract the Defamatory Statements and agree to resolve the matter on specified terms.  No reply was received from Defendants to Plaintiff's July 31, 2015 letter. True and correct copies of the July 20, 2015 and July 31, 2015 letters (redacted to remove settlement communications) are attached as Exhibit M.

48.     Accordingly, when no response was received to Plaintiff's July 31, 2015 letter, it sent an e-mail to Defendants on August 5, 2015 requesting acknowledgement of the July 31, 2015 letter.  Thereafter, on August 6, 2015, Plaintiff sent another letter to Defendant via e-mail repeating the demands stated in

the July 31, 2015 letter and demanding that Defendants do not launch a competing line of "Cartel Blue" jeans.  The August 6, 2015 letter also requested a response from Defendants by no later than August 14, 2015.  True and correct copies of the August 5, 2015 e-mail and August 6, 2015 letter are attached as Exhibit N.

49.     On August 11, 2015, Defendants sent a letter via e-mail to Plaintiff, which denied Plaintiff's assertions contained in the July 31, 2015 and August 6, 2015 letters and stated that Defendants "declines Hemp Blue's [sic] demands and intends to proceed accordingly."  A true and correct copy of the August 11, 2015 letter is attached Exhibit O.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment of No Trademark Infringement)

### (As to All Defendants)

50.     Plaintiff realleges and incorporates by reference each of the paragraphs above as though fully set forth herein.

51.     Defendants have accused Plaintiff of infringing Defendants' alleged trademark rights in the Disputed Mark.

52.     Plaintiff's first use of CARTEL BLUE word mark and Logo for jeans in interstate commerce by its predecessor in interest and assignor predates Defendants' use and, based upon information and belief, Defendants have never used the Disputed Mark in interstate commerce.

53.     Plaintiff is the senior user of CARTEL BLUE word mark and Logo for jeans and will be harmed by the continued assertion by Defendants that use by Plaintiff of its own common law trademark infringes any purported trademark right owned by Defendants.

54.     Plaintiff has no adequate remedy at law.

55.     In view of the foregoing, Plaintiff is entitled to a declaratory judgment that its use of its own common law CARTEL BLUE word mark and Logo do not infringe Defendants' purported trademark rights.

**SECOND CAUSE OF ACTION**

**(Cancellation of Federal Trademark Registration)**

**(As to Defendant Rhodes)**

56.     Plaintiff realleges and incorporates by reference each of the paragraphs above as though fully set forth herein.

57.     On information and belief, Defendant Rhodes attested to the United States Patent and Trademark Office ("USPTO") in the Amendment to Allege Use (Exhibit H) that his "Cartel Blue" mark was used in interstate commerce since April 23, 2014 for the goods listed in the application.  This assertion of use in interstate commerce was knowingly and deliberately false, with the intent to defraud.

58.     When Defendant Rhodes falsely stated under oath that the "Cartel Blue" mark was being used in interstate commerce for the goods listed, Defendant Rhodes knew that statement to be false, but made the statement in order to wrongfully induce the USPTO to issue the registration sought.

59.     In reliance upon and due to the foregoing false statement made by Defendant Rhodes in connection with Registration No. 4,690,524, the USPTO issued the Registration to Defendant Rhodes for use of the mark in connection with:

> "Bandanas; Beanies; Belts; Blazers; Blouses; Coats; Crop pants; Denims; Dresses; Footwear; Hats; Hooded sweatshirts; Jeggings, namely, pants that are partially jeans and partially leggings; Jump suits; Leggings; Long-sleeved shirts; Overalls; Pajamas; Pants; Robes; Scarfs; Shirts; Short-sleeved or long-sleeved t-shirts; Shorts; Socks; Suits; Suspenders; Sweat pants; Sweaters; Sweatshirts; T-shirts; Tank tops; Thermal socks; Thermal underwear; Ties; Trench coats; Underwear; Vests."

60.     As proof of use of a trademark in interstate or foreign commerce is a necessary prerequisite to obtaining a registration under 15 U.S.C. §1051(a) and as the USPTO will not issue a registration under that Section unless a mark is being used in interstate or foreign commerce, the misrepresentations made by Defendant Rhodes in the application were material to the USPTO in granting Registration No. 4,690,524.

61.     An applicant for a trademark mark registration commits fraud in procuring and/or maintaining a registration when it makes material misrepresentations of fact which it knows to be false or misleading.  Defendant Rhodes committed fraud in procuring and/or maintaining U.S. Registration No. 4,690,524 by falsely stating in his application for the "Cartel Blue" mark that the mark was being used in interstate commerce when he knew that statement was false.

62.     Registration No. 4,690,524 should be cancelled pursuant to 15 U.S.C. §1064(3) as this registration was obtained by fraud and therefore is void.

63.     In addition, Registration No. 4,690,524 should also be cancelled pursuant to 15 U.S.C. §1064(3) as the mark has not been used in interstate commerce for the goods listed in the registration.

64.     Defendant Rhodes is causing irreparable harm to Plaintiff CBD for which there is no adequate remedy at law.

65.     In view of the foregoing, this Court should exercise its authority to order the USPTO to cancel Registration No. 4,690,524.

### THIRD CAUSE OF ACTION

### (False Advertising Under the Lanham Act)

### (As to All Defendants)

66.     Plaintiff realleges and incorporates by reference each of the paragraphs above as though fully set forth herein.

67.     Defendants made false representations under the Lanham Act, 15 U.S.C. §1125(a).  In particular: (1) they made false and misleading statements of fact about their superior trademark rights to the Disputed Mark, (2) the statements were made in commercial advertisements, (3) the statements actually deceived or had the tendency to deceive a substantial segment of their audience, (4) the statements were material as they were likely to influence purchasing decisions, (5) Defendants caused the statements to enter interstate commerce, and (6) Plaintiff has

1   been or is likely to be injured as a result of the statements, either by direct loss of

2   sales or by a lessening of the goodwill associated with its products.

3        68.    The statements made by the Defendants were literally false, either on

4   their face or by necessary implication.

5        69.    Defendants advertise to the relevant public that they have superior

6   trademark rights to the Disputed Mark.

7        70.    As the result of Defendants' actions, Plaintiff is entitled to damages,

8   injunctive relief, attorneys' fees, and other appropriate relief.

9                          **FOURTH CAUSE OF ACTION**

10              **Common Law Trade Libel/Commercial Disparagement**

11                              **(As to All Defendants)**

12        71.    Plaintiff realleges and incorporates by reference each of the paragraphs

13   above as though fully set forth herein.

14        72.    Defendants published and caused to be published false statements that

15   are harmful to Plaintiff's interests, with the intent that the publication of the

16   statements would be harmful to Plaintiff's business and cause diversion of its sales

17   and harm to its interests.

18        73.    Defendants' statements are defamatory *per se* on the basis that they

19   falsely impute to Plaintiff matters incompatible with its business, trade, and

20   profession.

21        74.    By offering false and misleading representations of fact concerning

22   Plaintiff, as well as false statements, *inter alia*, expressly characterizing Plaintiff as

23   a trademark infringer when, in fact, Plaintiff is the senior user of the Disputed Mark,

24   Defendants disparaged the quality and integrity of Plaintiff's CARTEL BLUE

25   brand, thereby misleading consumers into believing that Plaintiff is a trademark

26   infringer that sells counterfeit merchandise, to the financial gain of Defendants and

27   to the detriment of Plaintiff.

28

75. At the time of such publication, Defendants knew that the statements were false or acted in reckless disregard of the truth of the falsity of such statements.

76. As a proximate result of Defendants' actions, Plaintiff suffered and will continue to suffer damage and loss in an amount to be determined at the time of trial.

77. In addition to damages for lost sales, Plaintiff is entitled to punitive damages pursuant to California *Civil Code* § 3294 as Defendants acted with actual malice or fraud.

## FIFTH CAUSE OF ACTION

**(False Advertising/Unfair Competition– Cal. *Bus. & Prof. Code* §17200 and §17500, *et seq*.)**

**(As to All Defendants)**

78. Plaintiff realleges and incorporates by reference each of the paragraphs above as though fully set forth herein.

79. The Defamatory Statements and fraudulent acquisition of Trademark Registration No. 4,690,524, as alleged above, constitute both unfair competition in violation of Cal. *Bus. & Prof. Code* §17500, et seq., and unfair competition in violation of §17200, *et seq.*, and have caused Plaintiff to suffer damages and lose sales that it would have made but for Defendants' wrongful conduct and have had an impact on the value of Plaintiff's stock once it is offered publicly. These actions also have caused Defendants to be unjustly enriched.

80. Due to the conduct of Defendants, Plaintiff has suffered irreparable harm, has suffered injury in fact and has lost money or property as a result of Defendants' unfair acts and business practices. It would be difficult to ascertain the amount of money damages that would afford Plaintiff adequate relief at law. Plaintiff's relief at law is not adequate to compensate Plaintiff for the injuries inflicted by Defendants. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief and restitution/disgorgement.

81.     Defendants' conduct has also damaged the public interest and Plaintiff's enforcement of the public interest in bringing and maintaining this action entitles Plaintiff to recover its attorneys' fees.

### SIXTH CAUSE OF ACTION

### (Conversion)

### (As to Defendant Rhodes)

82.     Plaintiff realleges and incorporates by reference each of the paragraphs above as though fully set forth herein.

83.     Plaintiff, in its own right and as successor in interest and assignee to certain assets and intellectually property rights of Cartel Blue Nevada and Hemp Blue, at all relevant times was and is, the exclusive and rightful owner by way of assignment of the jeans taken by Defendant Rhodes, the Cartelblue.com website, the Facebook page, and other social media accounts and possession thereof.  It is also the rightful owner and registrant of the Disputed Domain Names and possession thereof.

84.     Plaintiff's predecessor in interest and assignor, Cartel Blue Nevada, demanded the user names and logins for the Cartel Blue Facebook page, the Cartelblue.com website, and other social media logins and Defendant Rhodes refused.  Demand was made on behalf of Plaintiff's for the return of the jeans and Defendant Rhodes refused.  In addition, Plaintiff believes that a demand for the return of the Disputed Domain Names will also be refused by Defendant Rhodes and therefore it is futile to make such a demand at this juncture.

85.     By his acts and conduct alleged above, Defendant Rhodes has converted Plaintiff's property rights in the jeans, the Facebook page, the other social media accounts, the Cartelblue.com website, and the Disputed Domain Names for Defendant Rhodes' use and wrongful disposition for financial gain.

86.     Defendant Rhodes registered the Disputed Domain Names for the benefit of Plaintiff's predecessor in interest and assignor (and therefore for Plaintiff)

and changed the Disputed Domain Name registrations under proxy for his own use in contravention of Plaintiff's rights to them.

87.   Defendant Rhodes was aware that the jeans, the Facebook user name and password, the other social media user names and passwords, the user name and password to the Cartelblue.com website, and the Disputed Domain Names were rightfully Plaintiff's at the time of his misconduct.

88.   As a direct and proximate result of Defendant Rhodes' conversion, Plaintiff has been harmed by Defendant Rhodes' misconduct in an amount to be determined at trial.  In addition, Plaintiff is entitled to punitive damages pursuant to California *Civil Code* § 3294 as Defendants acted with actual malice or fraud.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

1.   Award Declaratory Relief on Plaintiff's First Cause of Action;

2.   Cancel Defendant Rhodes' Registration bearing U.S. Registration No. 4,690,524;

3.   Award actual damages suffered by Plaintiff as a result of Defendants' acts and omissions conduct;

4.   Award general (along with pre-judgment interest thereon) and specific damages in an amount to be proven at trial; and that such damages be trebled pursuant to 15 U.S.C. §1117;

5.   Order preliminary and permanent injunctive Relief pursuant to which Defendants and their agents, employees, or representatives, and all persons acting in concert or participating with them, are commanded, enjoined, or restrained, directly or indirectly, by any means whatsoever, from falsely disparaging Plaintiff or its products;

6.      Order that Defendants retract or correct the Defamatory Statements at their own expense to the extent necessary to correct any misperceptions resulting from Defendants' unlawful acts complained of above;

7.      Order Defendants to account to Plaintiff for, and disgorge, all profits they have derived by reason of the unlawful acts complained of above;

8.      Order Defendants to pay Plaintiff's reasonable attorneys' fees, pre-judgment interest and costs of this action under 15 U.S.C. §1117 and under Cal. Bus. & Prof. Code §17500, et seq. and §17500, et seq.;

9.      Order Defendants to return, transfer, or assign the converted property to Plaintiff;

10.     Award punitive damages and exemplary damages for Defendant Rhodes' conversion;

11.     Award costs incurred in bringing this action pursuant to 28 U.S.C. §1920; and

12.     Grant Plaintiff such other relief as this Court shall deem just and proper.

Respectfully submitted,

Dated: September 4, 2015        LEADER COUNSEL

By:   /s/ Jon M. Leader
      Jon M. Leader

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff demands a jury trial on all issues for which is has a right to a jury

3    trial.

4

5    Dated: September 4, 2015

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LEADER COUNSEL

By:  /s/ Jon M. Leader
          Jon M. Leader